The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, everyone. Mr. Faraci, you'll help me with the pronunciation. Yes. Yes, Your Honor. Good morning. Steve Faraci with the law firm of Whiteford, Taylor & Preston. Thank you. You may proceed. Thank you, Your Honor. May it please the Court. As I mentioned, my name is Steve Faraci with Whiteford, Taylor & Preston, and I'm here on behalf of the appellants, Charles Ayers, Jr., Ralph Koston, and Jesse Barber. I would like to reserve five minutes for my rebuttal time, and I'll start here. The appellants respectfully ask this Court to reverse the District Court's award of damages to the appellee in the amount of $157,195, both for breach of contract, as to all of the appellants, and for fraud, as to appellant Ayers. And while this Court has been asked to address multiple errors made by the District Court below, each of the errors flow from one fundamental mistake, and that is the award of compensatory damages to the appellee, despite the appellee's failure to prove compensatory or actual damages. As we look at the record, it is clear from the record, both in terms of the evidence and what was put on, and the governing documents, that the award of damages was speculative. It was contrary to the evidence, and it awarded plaintiffs a windfall. Put another way, the fundamental question that this Court must consider is whether the District Court erred by awarding compensatory damages when the appellee, Beatley, neither showed that the damages that were awarded were probable or supported by the evidence. If the appellants are correct on this point, then the District Court's awards for both because those awards fundamentally require an award of compensatory damages. As to the case, it arose out of plaintiffs' claims for breach of a settlement term sheet that had been entered into between the parties to resolve a prior state court litigation. The settlement term sheet involved two specific provisions that are relevant to this appeal. Section 2 of the settlement term sheet had provided that defendants or appellants would pay to the appellee $134,000 on or before July 17, 2019. Section 3 of the settlement term sheet provided that the appellants agreed to assume appellee's obligations on a certain loan that appellant, sorry, appellee had with Fulton Bank in the original principal amount of $157,000, which obligations included paying applicable interest payments to Fulton Bank under that loan. That Section 3 of the agreement also required that appellants use best efforts to obtain Fulton Bank's consent to assume the loan and release appellee. Now, the court below found the following relevant facts from which appellants do not appeal from. Appellants did not make their $134,000 payment on or before July 17, but payment was made including interest at the judgment rate, and it was made prior to any ruling on a breach of contract with respect to Section 2. Accordingly, the court found that there was no damages with respect to any breach of Section 2. As to the Fulton Bank loan and the Section 3 of the agreement that we're talking about, the court found that the appellants had made all applicable interest payments, albeit some of them late and after the due date of those payments up through the time that the loan was satisfied. The court found that the Fulton Bank loan was satisfied through the bank's exercise of certain rights in cash collateral that had been put up by a former partner of the entity, a gentleman named John Woodfin, Sr. The court also found that no further amounts were owed to Fulton Bank in connection with that loan and found that John Woodfin, Sr., as administrator of the estate of John Woodfin, Sr., had testified that there was no intention by Mr. Woodfin, Jr. as administrator to bring any claims against the appellee for the amount of the cash collateral taken by Fulton Bank. Can I ask a question, please? Yes, you may. Let me ask you this question. When you argue that no demand has been made for the payment of the $157,000 and that there's no intent to do so, aren't you really arguing that that claim is not ripe? It's both, Your Honor. And that is why we phrased it as it's an error because it's both speculative, it's too remote, and so to your point, not yet ripe, and it's also contrary to the evidence. So I believe that the court below could have accepted John Woodfin, Jr.'s testimony that there is no actual intent to bring a claim and that the estate is closed and therefore there is no claim and therefore no damages. Alternatively, the court could have and should have said the mere possibility that a claim could be brought by the estate is so remote as to not be ripe. And to your point, if John Woodfin, Jr., as an example, were ever to change his mind as administrator of the estate, a claim would accrue at that time under the settlement term sheet for the appellee, and that's sort of the point. He's been awarded damages to which he was never entitled under the settlement term sheet and has received a windfall because— Now that the estate has been closed, can any claim legally be brought for the $157,000 by anyone? Since the claim, the existence of the claim was known during the time the estate was opened by the administrator. Can there be any legal claim now by anybody? I don't believe that it can. The estate is closed, Your Honor. There was a debts and demand hearing. In reviewing that question, I do believe there is some case law in Virginia that suggests that notwithstanding the debts and demand hearing and notwithstanding that it has been closed, that an administrator can reopen and still seek those damages. As to a claim he knew about during the time the estate was opened? That is the unknown question. So the law only speaks to the fact that a claim could be made by an administrator even if an estate is closed. I believe there would be certainly an argument that he was either stopped from doing so because he knew about it during the course of the debts and demand hearing and did nothing and, quite frankly, chose not to do anything as his testimony has indicated. Can you represent who the beneficiaries of the estate are? Can you represent that? Because as administrator, he has a fiduciary duty to collect all funds owing to the estate. He has no option in that regard. Now, what has he done, you know, that has somehow firewalled himself against a claim like fiduciary duty? Because when you stand in the shoes of an executor or an administrator, your first job is to collect all debts and properties owed to the estate. So the estate is an entity to itself. I'm not sure that an administrator can on his or her own say, I'm not going to collect that which the law of Virginia says you're required to collect. What's your thought if he's saying that they have that option? Your Honor, my—well, you asked two questions. I'm going to try and address them. The first is, can I represent who the beneficiaries are? The beneficiaries are Mr. Woodfin Jr. and his sister, who is also— and I believe his mother, who is co-administrator, may also have some benefits with respect to that estate as well. So those are—that's my understanding of the beneficiaries. As I mentioned, I believe that an administrator of an estate has the ability and the right to settle claims. While he may have a duty to collect, there has to make—he has the authority under Virginia law to determine in what manner he will seek to collect all debts and whether he may compromise certain claims. Certainly, a fiduciary acting on behalf of the state has the right and ability to do so. And one of the things that you'll see in the record below is that Mr. Woodfin, in his capacity in fiduciary of the estate, was well aware of the issues associated with the anchor point development out of which this loan arose and had concluded that the entanglements in connection with the anchor point development were so significant and had been such a drain on that which his father's—his father's investments and ultimately the estate's investments that it was appropriate not to take any further action to try and collect those debts and ultimately try to sell the property and get out of the development. That was the testimony at trial. And I think it was a reasonable and reasoned business decision by a fiduciary on behalf of the estate that to go further and try and collect those debts would result in further losses to the estate. Well, you know, I don't see how that could be the case now. All you have to do is just cash the check. You know, all you do—you've got a judgment—potentially a judgment debt rate that's owed by your client. Just cash the check. Now, I agree if it was still entanglement and litigation. I don't know how a fiduciary can say—you're absolutely right. A fiduciary under Virginia law can—can obligate and make—has the power to do so. But it's got to be consideration. It's in the best interest of the estate. And I don't see how a potentially liquidated, collectible amount that you can just cash the check will somehow be in the best interest of the estate to say, I'm going to eschew that opportunity. Because, see, it's interesting that once Mr. Woodfin passed—unfortunate—and family, but the estate is an entity of its own. You could be a beneficiary of the estate. The cap you wear as fiduciary is different. You know, your heart might be one way, but the law says you have another one. It's for the estate. You don't want it? Give it away. If you have—if you're a beneficiary, I don't want the money. I'll give it to charity. You can. But it belongs to the estate, which is an entity under Virginia until you say it's closed. But I think it's a question of whether that's the case. But anyway, I understand your argument, because you were lying on—and then you told me to answer the first question. How do you know that the other two members agree with this? That they signed on to—that they want to give this up to? There is no written document in the record that confirms that. And if I may, Your Honor, one follow-up point to a comment that you made that you said all he has to do is cash the check, he being John Woodfin Jr. as administrator of the estate. Remember that the award that we are on appeal from here was not an award that directed Mr. Beatley, gave him a judgment, and directed him to pay it over to the estate. It is an award directly to the appellee, Beatley, for the full amount of the loan to which he no longer owes on and any claim has not yet been made. Absolutely right. And that might be something that potentially could be adjusted in terms of the award. I mean, that is a sticking point. I agree with that. The way it is now. But that is still in the breast of the court in terms of how that ought to be adjudicated. Go ahead, Mr. Arden. Thank you so much for your help. Go ahead. I had a question. In your reply, Mr. Faraci, you suggest that the appropriate remedy would be for the defendants to indemnify Mr. Beatley against any prospective claim from the Woodfin estate. Do you have any authority under which that could be a potential remedy? So, Your Honor, I think the way in which I phrased it, and I think this is accurate, if you actually look at the settlement term sheet in Section 3, because what the obligation was, and when we look at that, there was no obligation that the appellants ever pay Appellee Beatley $150,000 to satisfy the loan. The obligation was to assume all obligations with respect to that loan. And so I believe an indemnification obligation exists to the extent that the estate were ever to bring a claim. And so it is to Judge Traxler's point that it goes either towards what I have called the damages being speculative issue, what Judge Traxler perhaps more appropriately called rightness. So to the extent that there is a claim that is ever raised, I believe there's a duty under that language in Section 3 that exists. And therefore, that is why I raise that that is the appropriate remedy. I don't think that the court would need to layer on an additional indemnification obligation. I believe it exists in the document that's within the record. I see my time is almost up. So the last point that I would make, and I think it's an important one, is to note that the award as it stands right now gives Appellee Beatley a windfall. And this is particularly highlighted when we look at it in terms of the award that was made based on fraud as to appellant heirs, because the law is clear in Virginia that no damages exist if a plaintiff is in no worse position than if the fraud had never occurred. And here, Plaintiff Beatley is in a position where he doesn't owe on a loan. No claim has been made against him for the amount of the cash collateral seized. And yet he's now been awarded $157,000 by this district court. We believe it was error. The second part is right. He hadn't paid. No claim has been made. But the first part, he said, the second part said he doesn't owe it. He does owe it. Your Honor, my time is up. May I respond? And very briefly, what I said was it is not owed to Fulton Bank and no claim for the successor has been made. I thank you for your time this morning, Your Honors. Thank you so much. Mr. Thomas? Yes. Good morning. Chief Judge Gregory, Senior Judge Traxler, and Judge Gallagher. My name is Norman Thomas. I represent Mr. J. Beatley, who was the plaintiff below. I'd like to also reserve five minutes for rebuttal time. I want to go right into this point about the $157,195. Judge Gallagher, you raised the point about indemnity. They acknowledged in their appeal, excuse me, the reply brief at page eight, this issue of indemnity. And once they did that, they have acknowledged more than they realize. There are two cases that are on point that indicate that Mr. Beatley was entitled to the entire amount of the liability once Fulton Bank called the loan, even if he had not yet retired that debt. One is from this court, and these, I want to give the citations for the court. State Planters Bank and Trust versus First National Bank. It is reported at 76F2nd, page 527, and at page 532, it discusses this concept of a contract of indemnity against liability. This is not an indemnity to reimburse. It's an indemnity against liability, and they failed in that regard. The court finds in that case that the legal liability is incurred and not the actual damage sustained as the measure of damages. And the Fourth Circuit relies on a Virginia case, Oriental Lumber Company versus Blades Lumber Company at 50S270. And that case discusses this concept in Virginia law, which is controlling here of a contract of indemnity against liability. And I'll quote very briefly from it, but it is the dispositive case here. Quote, a right of action accrues at once to the indemnity to recover the amount of the debt without regard to the question of whether or not the indemnity has yet paid it. Mr. Thomas? Yes. Are these cases in your briefs? They are not, and we did not cite them until they acknowledged that this was an indemnity matter. And as appellees, we were at that point, we felt free to raise this issue to the court that these dispositive cases made it so that the debt was right. When Fulton Bank called the loan all the way back in February of 2018, once they assumed the debt, once they assumed the obligation to pay it, then once Fulton Bank called it, then under Virginia law, as recognized by the State Planters Bank case here in the Fourth Circuit, Mr. Beatley was entitled to the entirety of the liability. And once he receives the damages, then of course, as Chief Judge Gregory has noted, the estate still has an asset. And that asset is the estate's ability to claim directly against Mr. Beatley for the $157,000 and $195,000 that it paid to retire the Fulton Bank debt. All right, let me ask you another question. Is it your position that a beneficiary of the estate could make an inviolable claim for the $157,000 even though the estate has been closed and even though the administrator knew about this claim before the estate was closed? Absolutely, yes. Do you have a case, could you tell me what case you rely upon for that proposition? Well, in our brief, we cited the statute 49, I believe, dash 27, and we did cite a number of cases back to say that the person that has paid the debt is in the most favored position in Virginia law. Your Honor, I can pull up my brief and cite that to you. I have your brief, so the cases you rely upon are in your brief. Yes, sir. And during the questioning of Mr. Woodfin, Jr. at the trial, trial counsel, Mr. Burr… No, no, my question is a legal question. It has nothing to do with the testimony. Well, the beneficiary… I didn't want you to get sidetracked. Yes, sir, Your Honor, and thank you. But the beneficiaries have the right to not only demand but to require the administrators to pursue the asset. It's important to remember, too, that the debt was called in February of 2018 by Fulton Bank. The statute of limitations has far from run. It's a written contract for which the limitations period is five years in Virginia. And so all Mr. Woodfin or his mother, Nancy Woodfin, who is the co-administrator, need to do is make the demand. And under the statute that we've cited in our brief and the cases that go back to… at least one of them goes back to the 18th century, all they need to do is make demand on Mr. Beatley. This fact that Mr. Woodfin says the estate is closed doesn't make a bit of difference to the beneficiary's right to demand that he undertake his fiduciary duty. So the claim is ripe. It's been ripe since the call of the debt under the ethical statutes of liability, of indemnity against liability. I also wanted to just… Before you go to your next point, I'm sorry to turn you off your track once you start with this. What do you say about swindle and notwithstanding your right to… Estate being closed now simply means that the beneficiaries have control of what now belongs to them, which would be the right to call on this loan, subject to, of course, statute of limitations as you alluded to. What about the idea that they never did do that? It never happened and the statute has run. Is that a windfall or is that something that we should be concerned about from a legal standpoint? Just give me your take on that. Yes, Your Honor. It is not a windfall because the controlling cases say it is not. That's the first answer. That's the State Planters Bank case and the Oriental Lumber case. They articulate at length that if the indemnitor assumed the debt, that once the debt is called, the indemnity is entitled to the entire amount from the indemnitor without regard to whether they've paid that debt. But also, there's a second point I'd like to make, and that is Mr. Beatley still owes this money. He has not been released. There is no release from the estate. A debts and demands hearing means nothing. That only protects the administrators from dispersing the estate as to creditors. There's been no release as to this asset of the estate to Mr. Beatley. So, he is still, as the district judge found, on the hook, but just to a successor creditor for the exact same liability, the liability on the Fulton Bank note. So, those would be my comments on that. Thank you. Go ahead, Patrullo. All right. And the fact that the $157,000 is damages then supports the predicate for not only attorney's fees award, but also for the punitive damages award against Mr. Ayers. But I want to comment about Mr. Costin because under Virginia law… Before you leave that subject, presume, just for the sake of argument, this is just a hypothetical, that $157,000 in damages, that amount is not available to you as a predicate for the punitive damages. You also argue in your brief that even if it's not, the $134,000 payment plus interest or the failure to pay that money on time would be a predicate for the punitive damages. Could I hear you on that point, please? Yes, Your Honor. And there's two prongs to that argument. The first is this. Once this federal lawsuit was filed, there was a 12B6 motion to dismiss file. The court swept that aside as meritless.  There never was an answer filed by these defendants denying that they owed the $134,000. And that's why we moved for partial summary judgment on the pleadings. So when, as the district court found, when judgment against them was imminent, they came rushing in and they paid it to thwart any punitive damages claim. But what I would note is this. They, it's a judicial admission. They never denied, once the complaint was filed and served on them, they had an amount of time to deny that they owed this debt. And they didn't. And Mr. Beatley argued it as damages. So really, it's an admission of these damages. And the fact that they paid it early doesn't make a bit of difference. It was still damages. And as the courts have found this concept of when you say it was paid early, you're referring to it being prior to a ruling by the court on the motion. It's actually late because it's beyond. If you look at the date it was due, it's late. Well, agreed. It was admitted damages. That is perhaps the best way to express it. They admitted the damages by number one, failing to deny the debt. And number two, paying it in full. And that is an admission. So we say that admission is a sufficient predicate for purposes of damages. But we've also cited a number of cases that say that it's not so much the award but the showing of actionable harm. And there were two cases we cited. One of them was the People Helpers Foundation case at 12F3rd, page 1321. And it discusses in terms of actionable harm as opposed to the outright award. And then we did cite one very thoughtful opinion from the Southern District of New York, the Klein v. Speer and others case. It's from 306F Sup 743. It's a 1969 case. And, Your Honor, in that case, one of the defendants, one of several defendants, settled with the plaintiff by paying the money. But the plaintiff still wanted a punitive damages award, and the court allowed the plaintiff, although damages, the compensatory damages were satisfied, to show that those damages were in fact owed for a predicate for punitive damages. And the court said that the better reasoned authority appears to be, appears to require only the showing of actual damages and not demand that they be actually awarded. So on those two prongs, we rest our argument that the $134,000, when it was paid, was paid as admitted damages, and therefore could be the predicate, not only for compensatory damages, but for the damages for fraud and also the damages for the conspiracy to bring about contract breach, which we've argued the district court also should have found in our favor. Turning directly to Mr. Costin's fraud. Can I just stop you for one minute and ask on the conspiracy point, why is the conspiracy count important here? The damages, the $157,000 have already been awarded on the breach of contract claim. What practical difference does it make us to the conspiracy count? Well, Your Honor, we're being thorough for our client. We want to make sure that our client on every theory of recovery has the damages compensated. And in that regard, Mr. Woodfin, from the very beginning, combined with Mr. Ayers, with Mr. Costin's knowledge, and as the district court found, he knew of the scheme, and they got together for the sole purpose of thwarting Mr. Beatley's entitlements under the contract. And that is the type of interference with a contractual relationship involving a third party. Here, Mr. Woodfin, that is tortious and is conspiratorially so because they were all in it together. We've met all the elements and where the district court fell off on all of these was first not recognizing the $134,000. Not recognizing that fraud in the inducement as to the contract is fraud in the inducement as a whole contract. The court parsed between $157,000 and $134,000. But in Virginia, a contract is interpreted as a whole and fraud in the inducement as to the contract is fraud in the inducement as to the whole. So if any material term was misrepresented in terms of an intent to perform it, it was fraud in the inducement. And that's why Mr. Costin is equally liable with Mr. Ayers for that fraud. My argument time is up. I'd like to just simply reserve the rest for the final argument. Thank you, Mr. Thomas. Yes, Chief Judge Gregory. I'd like to start here with respect to the cases cited by Mr. Thomas. And while I will not profess to have had an opportunity to review them in great detail during the course of Mr. Thomas's argument, one salient point I think is critical. There's a distinction between even if it is a contract of indemnity, when you talk about a breach of contract, the elements necessary for recovery on a breach of contract don't change by virtue of it being an indemnity contract versus some other type of contract. And in Virginia, every breach of contract claim requires the proof of actual damages. And so in a case where you have a contract of indemnity and you have an indication that as to the indemnity or the plaintiff is entitled to the entirety of the amount regardless of whether they have paid the underlying debt, not relevant to the issue that we have in dispute. Because by the time a claim was made here by the appellee, there were no damages to him as to Fulton Bank. So what we're talking about now is what, if anything, remains as to potential liability for the amount of the 157. And what we have is the potential, what I have called the mere possibility of a claim by the estate. And so I do not believe that the existence of those cases and talking about how a contract of indemnity would work, particularly in the instance where you have someone who sues in advance of the time that they pay the underlying debt. That, you know, it's essentially a situation where if you still owe the underlying debt, you can get those damages because you owe the underlying debt here. The underlying debt is to Fulton Bank has been satisfied and there is a mere possibility of a future claim that could be raised. So I do think it's important distinction. Yeah, I have to look at the cases, but it seemed to me, maybe I'm wrong, Mr. Thomas knows better, he'll come back up. It seems to me those cases suggesting that the time that you owe the money, your clients owe the money is at the time of the call. That's the triggering point, which might answer the question, maybe a little of my dear colleague, Judge Trashler, as to what point is it due? Because it's not a right to reimbursement, it's indemnity. Different reimbursement would be with, well, you have to get back what you paid, but indemnity is a different question. It seemed that the case is at the point where Fulton Bank called the loan. And that's the time that you, as the person who's supposed to assume that, had to pay up. Instead, someone else did. Instead, they became a successor to Fulton Bank and they stand there. So the point of indemnification is at that point. That's what I think the case is saying. And you owe it. I think that's the case there, but I need to look at it further. But I think that's the point of the case. It's not reimbursement, it's indemnity. When is that? When the call was made. That's what I'm saying. That's what happened. It's undisputed that Fulton Bank is no longer a host. Somebody stepped in and sort of, it's what they call in Broadway, like an angel, paid it. And you're saying, well, until the angel collects on you, I'm not going to give you anything. But the question is, in the case of indemnity triggered your time to pay, not when we had to pay. That would be reimbursement. But anyway, I may be wrong about that, but I haven't looked at it carefully. But I think that's what the case is saying. And your point is well taken as to the accrual of a claim, Your Honor. But I don't believe that there's anything about those cases that discuss the accrual of a claim regarding a contract of indemnity or the timing of a payment that somehow abdicate the responsibility that a plaintiff has to prove their damages with reasonable certainty and to do so as a part of their prima facie case of breach of contract. That would be a meaningful change in Virginia law. The cases are too many and too numerous. And we've cited a number of them in our brief that established that when you are going to seek a successful claim for breach of contract, the proof of actual damages proved to a reasonable certainty has to be a part of your proof. And so I do not believe that the nature of the contract being indemnity changes it. What it does is require an analysis along the lines of whether those damages are speculative, whether those damages are too remote or whether the claim is not yet right. So I think it's an important point. I see my time is up and thank you for you. I asked you a question. You had a short time. It's something you 30 seconds want to close in. One final point on the conspiracy to breach a contract that was raised, and that is with respect to a conspiracy to breach a contract does not exist as a viable claim under Virginia law. And if you're talking about conspiracy that relates to the tortious interference with contract, which is really has been raised when you deal with that, there has to be an underlying wrongful act. And all of which was pointed to in the record was an encouragement for Woodfin to exercise his legal rights as a creditor. That is not an underlying tortious act. And that is another reason why that claim failed. And I thank you for your time and for the indulgence of the additional minute. Thank you. Thomas. Thank you, Chief Judge Gregory. The hundred and fifty seven thousand one ninety five as a matter of law is the amount. It's the exact amount of the Fulton Bank claim. And I don't normally do this in oral argument, but I'm going to quote a very brief passage from Oriental Lumber, which is the case and the page number that the Fourth Circuit cited in the state planners bank case. It states that, quote, if the act which the indemnitory bound himself to do was to pay or discharge a debt and he fails to do so, a right of action accrues at once to the indemnity to recover the amount of the debt without regard to the question of whether or not the indemnity has paid it. That's dispositive. And we on that issue. It's a matter of law. It's not a matter of analysis by court. What what the defendants are here angling to do is painfully obvious. And that is to have this court reverse the district court. Then Mr. Woodfin claims against Mr. Beatley. And then the defendants again default on paying the one hundred and fifty seven thousand dollar debt. And Mr. Beatley has the joy of suing a third time for that amount. And that's not what Virginia law requires him to do. And the Fourth Circuit has recognized the same in the state planners bank case. I also want to address this point about the conspiracy. My colleague has indicated that while Mr. Woodfin was only seeking to collect amounts that were duly owed, that amounts that were appropriate for him to do so. The Fourth Circuit has said that although one may be acting in their own legal interests, there is no protection from conspiratorial conduct when they know or have reason to know that they will interfere with the performance of a third party's contract. And Mr. Woodfin didn't know it. Didn't just know it. It's the reason that he sent these repeated demand letters. Everything he did was to thwart Mr. Beatley's entitlements under the settlement agreement. He knew that's what he was doing. Mr. Ayers was urging him to do it. Mr. Costin was repeatedly asking Mr. Ayers, have you heard back from Mr. Woodfin? What are we going to do? And Costin also testified that the failure to pay Mr. Beatley was done at Mr. Woodfin's request to give Jack Woodfin time to decide what he wanted to do. The Commerce Funding Corporation case at 249 F 3rd 204 at page 210 interpreted Virginia law and quoted the Chaves v. Johnson case of Virginia law to say that there's no defense to this conspiratorial conduct simply by virtue of the fact that the third party interfering with the contract, here Mr. Woodfin, had a lawful death that he may have wanted to collect at the same time. At this point, I do want to mention that we are seeking appellate attorney fees upon the affirmance of the district court. We're seeking that Mr. Costin be found guilty or liable for actual fraud, just as Mr. Ayers was, and that on remand that the district be instructed to at least consider an award of attorney's fees and punitive damages as well against Costin, not only for his role in the fraud, but against Ayers and Costin for their role in the conspiracy as well. Can I ask a question? Yes. Just based on what you just said, you expect us to find that Costin is liable? I don't know how we could possibly do that. It would involve factual findings that we obviously don't have the authority to make, particularly in the face of contrary findings by the district court. Your Honor, the facts are in the records and the law... I know, but we... If I may... Go ahead. I may not satisfy you, but I do want to answer you. I understand. In Virginia, if you represent and enter a contract, if you represent entering certain performance of material terms and you don't at that time intend to perform those promises, that in and of itself is actionable fraud. And we have cited those cases. And that is what Mr. Costin himself admitted doing. So we do feel that the record is complete on that and that his fraud is a matter of law based on his own... Thank you. Are you saying that's sounding in sort of a covenant to warrant some good faith or is it inducement? It's fraud in the inducement, Your Honor. When Mr. Costin entered into the settlement agreement intending not to pay the $134,000 upon its due date and the amount and the date it's due are both material terms, he misrepresented as a matter of law under Virginia jurisprudence and intent to perform his promises. And that in and of itself is fraud. But wasn't that only as to the $134,000? Actually, Your Honor, under Virginia law, if you are fraudulent... No, I'm talking about the factual findings by the district court. When you say his intent... Go ahead. No, no, no. Please don't let me interrupt you, sir. The district court parsed between the $134,000 and the $157,000. Our argument on appeal is that fraudulent inducement as to any material term is fraudulent inducement as to the entire contract. And that's the Packard-Norfolk case that we have cited. But as Judge Traxton said, you didn't prevail on that. So you got to up your climb and clear error on the fact. Well, Your Honor, our thesis here is that as a matter of law, the district court parsed between those two damages amounts when it should not have done that. It was fraudulent inducement as to the contract as a whole. And that would resolve it on a de novo question. All right. I think we understand your argument. No further questions. Counsel, unfortunately, we cannot give you, hopefully, the pleasure, but certainly it's mutual to come down and shake your hand because we're in this virtual reality now. But please know that, nonetheless, our gratitude and respect for your advocacy here today was very helpful and we appreciate you very much. And we hope that you will stay safe and be well. With that, I'm going to ask the clerk to recess the court briefly. Thank you. Thank you, Your Honors. Thank you, Counsel. This honorable court will take a brief recess.
judges: Roger L. Gregory, William B. Traxler Jr., Stephanie A. Gallagher